[S. F. No. 8875.   In Bank.—September 24, 1918.]

# FRANCIS J. HENEY, Petitioner, v. FRANK C. JORDAN, as Secretary, etc., Respondent.

ELECTIONS—DIRECT PRIMARY LAW—FAILURE TO OBTAIN PARTY NOMINA-
TION—INELIGIBILITY OF CANDIDATE AS NOMINEE OF OTHER POLITICAL
PARTY—CONSTITUTIONALITY OF AMENDMENT OF 1917.—The proviso
added to section 23 of the Direct Primary Law of June 16, 1913
(Stats. 1913, p. 1379), by the amendment of 1917 (Stats. 1917,
p. 1341), declaring that no candidate for a nomination for other
than a judicial, school, county, township, or municipal office who
fails to receive the highest number of votes for the nomination of
the political party with which he was affiliated thirty-five days before
the date of the primary election, as ascertained by the Secretary of
State from the affidavit of registration of such candidate in the
office of the county clerk of the county in which such candidate
resides, shall be entitled to be the candidate of any other political
party, is not violative of the constitution.

ID.—CONSTRUCTION OF LAW—RULE.—In considering whether any par-
ticular provision of the Direct Primary Law is violative of the con-
stitution, it must be borne in mind that the question as to what pro-
visions are essential to attain the objects contemplated by section
2½ of article II of the constitution is one peculiarly within the
domain of the legislative department, which is practically given
plenary power in the matter, that the presumption is in favor of the
validity of any provision made, and that if there is any theory upon
which the provision might reasonably have been concluded by the
legislature to be essential, the courts may not interfere.

ID.—TESTS FOR CANDIDATES—RIGHT OF LEGISLATURE.—Under section 2½
of article II of the constitution, the legislature has the right to
prescribe tests and conditions for candidates as well as for electors.

ID.—DETERMINATION OF PARTY AFFILIATION.—The test prescribed for de-
termining party affiliation in the amendment of 1917 to section 23
of the Direct Primary Law is a reasonable one.

ID.—INELIGIBILITY OF CANDIDATE RECEIVING HIGHEST VOTE—NEXT HIGH-
EST CANDIDATE NOT NOMINEE.—In view of the provision of section 23
of the Direct Primary Law declaring that the person receiving the
highest number of votes at a primary election as the candidate for
the nomination of a political party for an office shall be the candi-
date of that party for such office, a candidate who received next to
the highest vote, the highest vote being obtained by the candidate
for the nomination of another political party, which he did not
receive, cannot be held to be the party candidate.

ID.—RULE APPLICABLE TO PRIMARY ELECTIONS.—The rule that where
the one receiving the highest vote at an election is for any reason

ineligible, the candidate receiving the next highest vote is not elected, in the absence of statutory provision to the contrary, is applicable to primary elections.

ID.—FILLING OF VACANCY ON TICKET—AUTHORITY OF PARTY COMMITTEE —CONSTRUCTION OF AMENDMENT OF 1917.—In view of the amendment of 1917 to section 25 of the Direct Primary Law, a party committee is only authorized to fill a vacancy on the ticket occurring after the holding of the primary election in the single instance of the death of the candidate.

PROCEEDING in mandate originally taken in the Supreme Court to compel the Secretary of State to issue a certificate of nomination to petitioner as party candidate for Governor. Dismissed.

The facts are stated in the opinion of the court.

Joseph H. Call, Daniel Sims, Bert Schlesinger, and John O'Gara, for Petitioner.

U. S. Webb, Attorney-General, and Wm. H. Jordan, for Respondent.

Isidore B. Dockweiler, and Garret W. M'cEnerney, for Democratic State Central Committee.

ANGELLOTTI, C. J.—This is a proceeding in mandate which has been submitted for decision upon the petition and a demurrer interposed thereto.

The material facts as stated by the petition are as follows: At the recent primary election, petitioner and Thomas Lee Woolwine, who were each affiliated with the Democratic party for thirty-five days and more before the date of the primary election, as shown by their affidavits of registration, were candidates for the Democratic nomination for Governor of the state of California, as was also James Rolph, who was so affiliated with the Republican party, as shown by his affidavit of registration. Said James Rolph, together with certain others, including Governor Wm. D. Stephens, were candidates for the Republican nomination for Governor. Mayor Rolph failed to receive the highest number of votes for the nomination of the Republican party, Governor Stephens winning that nomination. He did, however, receive the highest number of votes for the nomination of the Democratic party, the

petitioner receiving the next highest number of votes for such nomination. Petitioner claims that under our primary law, Mayor Rolph, by reason of his failure to win the Republican nomination, cannot be the nominee of the Democratic party, and that he, petitioner, by virtue of having the next highest vote, is the Democratic nominee. He further claims that in the event that a vacancy has been caused by the disqualification or ineligibility of Mayor Rolph, he is the nominee of the Democratic party by reason of having been selected by the Democratic State Central Committee to fill the vacancy. His petition alleges, and it is conceded by the demurrer thereto, that such committee has assumed to designate him to fill such vacancy, if, in fact, a vacancy existed. He has demanded of respondent that he issue to him a certificate of nomination and that he certify his name as that of the nominee of the Democratic party for the office of Governor at the coming general election, and respondent has refused to do so. Hence this application for a writ of mandate.

In view of the proximity of the day fixed by law for the holding of the general election, and the fact that to nominate any independent candidate or candidates for the office of Governor under the provisions of section 1188 of the Political Code, it is essential that the nomination papers therefor be presented to county clerks and registrars not later than September 26, 1918, we deem it imperative, in the exercise of common fairness to all concerned, to announce at once the conclusion of the court upon the various questions presented by this application. It will be impossible in the short time afforded for the preparation of an opinion to do more than to state very briefly the reasons for those conclusions.

1. Section 23 of our Direct Primary Law of June 16, 1913 (Stats. 1913, p. 1404), as amended in 1917 (Stats. 1917, p. 1356), declares that except as to judicial, school, county, township, or municipal officers, "the person receiving the highest number of votes, at a primary election as the candidate for the nomination of a political party for an office shall be the candidate of that party for such office, and his name as such candidate shall be placed on the official ballot voted at the ensuing election"; provided he has paid a filing fee, and, "provided, further, that no candidate for a nomination for other than a judicial, school, county, township or municipal office who fails to receive the highest number of

votes for the nomination of the political party with which he was affiliated thirty-five days before the date of the primary election, as ascertained by the Secretary of State from the affidavit of registration of such candidate in the office of the county clerk of the county in which such candidate resides, shall be entitled to be the candidate of any other political party." This proviso was added by the amendment of 1917. It is plain and unambiguous in its terms and the language is susceptible of only one construction. If it be a valid enactment, and, of course, it is such unless violative of our state constitution, Mayor Rolph, owing to his failure to receive the highest number of votes for the Republican nomination for the office of Governor, cannot be the candidate of the Democratic party for that office at the general election.

We are entirely satisfied that there is no good ground upon which the courts may declare this provision to be violative of our constitution. The constitution itself declares as follows: "The legislature shall have the power to enact laws relative to the election of delegates to conventions of political parties; and the legislature shall enact laws providing for the direct nomination of candidates for public office, by electors, political parties, or organizations of electors without conventions, at elections to be known and designated as primary elections; also to determine the tests and conditions upon which electors, political parties, or organizations of electors may participate in any such primary election. It shall also be lawful for the legislature to prescribe that any such primary election shall be mandatory and obligatory." (Sec. 2½, art. II.) It is in pursuance of this provision that the legislature has enacted our Direct Primary Law. There can be no doubt that the object and effect of the laws enacted by the legislature was to make primary elections mandatory and obligatory in so far as political parties are concerned, and to preclude a nomination by a political party made in any other way than that allowed by the act. In considering whether any particular provision of that act is violative of our constitution, it must be borne in mind that the question as to what provisions are essential to attain the objects contemplated by section 2½, article II, of the constitution, is one peculiarly within the domain of the legislative department, which is practically given plenary power in the matter, that the presumption is in favor of the validity of any provision made, and that if there is any theory upon which the provision might reasonably have been concluded by the legis-

lature to be essential, the courts may not interfere. As was said in *In re Spencer,* 149 Cal. 400, [117 Am. St. Rep. 137, 9 Ann. Cas. 1105, 86 Pac. 897], quoting approvingly from a prior decision: "The delicate act of declaring an act of the legislature unconstitutional and void should never be exercised unless there is a clear repugnancy between the statute and the organic law. In a doubtful case the benefit of the doubt is to be given to the legislature."

We regard the opinion in the case of *Socialist Party* v. *Uhl,* 155 Cal. 776, [103 Pac. 181], as practically disposing of what we conceive to be the principal claim of those attacking the provision which here disqualifies Mayor Rolph. The essential thing there decided, in so far as any question here involved is concerned, was that it was competent for the legislature, under section $2\frac{1}{2}$, article II, of the constitution, to prescribe any test not only for electors voting at the primary, but also for candidates for a party nomination, which had any reasonable relation to the maintenance of the integrity of political parties, which was held to be one of the obvious and authorized purposes of the primary law. The precise question there under discussion was as to the validity of a provision of the primary law which precluded anyone from being a candidate for a party nomination at a primary and practically precluded the party from nominating him, unless he filed with his nomination papers an affidavit showing that he affiliated with the party at the last preceding election and that he had either not voted at all, or had voted for a majority of the candidates of that party. Substantially the legislature had thus said that only one affiliated with a party could be a candidate for nomination by it, and that the reasonable method of determining whether one was so affiliated was the one prescribed, the manner in which he voted at the last preceding election as stated in his own affidavit. The matter was very fully considered by the court and the provision was sustained. In this respect the decision was expressly approved in the later case of *Hart* v. *Jordan,* 168 Cal. 321, [143 Pac. 537], the court saying: "Under this section ($2\frac{1}{2}$ of art. II, Const.), the legislature may prescribe tests and conditions for candidates as well as for electors." We regard this matter as definitely settled by our decisions. In so far as is material to the question of power and reasonableness, there is no real difference between the provision involved in *Socialist Party* v. *Uhl, supra,* and the provision here assailed. A person affiliated with one party is precluded from nomina-

tion by any other party at the primary only when he fails to receive nomination at the hands of his own party, and the matter of his party affiliation is to be determined in a different way. As to the condition rendering him ineligible in the event of his failure to obtain his own party nomination, the legislature may well have concluded that it would not be conducive to the integrity of parties that one who has failed to obtain nomination for a certain office by his party should be allowed to avail himself of the nomination of an opposing party for that office in opposition to the successful nominee of his own party; or that such opposing party should be allowed to have him as the nominee under such circumstances. We certainly cannot say that this was an unreasonable conclusion, or that in providing against such a situation the legislature was exceeding its power. Nor can we say that the test prescribed by the legislature for determining the party affiliation in such a case is unreasonable. Doubtless other tests might have been adopted, some of which might appear to us, if we were sitting as legislators, more reasonable than the one prescribed. But the legislature adopted the one stated in the provision. The theory apparently was that it was reasonable to accept the sworn avowal of allegiance of a person to a party, standing of record thirty-five days before the primary, as constituting the best and only evidence of such real and permanent affiliation with a party for all the purposes of the ensuing primary, as would make desirable such a provision as the one here involved.

We have considered the many other minor objections made by learned counsel to this provision, and are of the opinion that none of them is sufficient to warrant us in declaring the provision violative of the constitution.

The claim of petitioner that Mayor Rolph, who received the highest vote at the primary for the nomination of the Democratic party for the office of Governor, cannot be the candidate of that party in view of this provision of the Primary Act, a claim not disputed by respondent, must be held good.

2. We are satisfied that, under the circumstances we have stated, petitioner cannot be held to have been nominated at the primary election, or to be the candidate of the party by virtue of such primary election. There is nothing in the primary law to authorize such a construction of the act as would lead to such a conclusion. Indeed, the provision is explicit that as to party nominations, "the person receiving the highest number of votes at a primary election as the candidate for

the nomination of a political party for an office shall be the
candidate of that party for such office,'' etc. The petitioner
did not receive the highest number of votes cast for such
nomination, but only the next highest. It is a rule approved
by the overwhelming weight of authority in this country, and
expressly affirmed several times in this state, that where the
one receiving the higest vote at an election is for any reason
ineligible, the candidate receiving the next highest vote is not
elected, in the absence of statutory provision to the contrary,
with the result that there is no election. (See *Saunders* v.
*Haynes,* 13 Cal. 145; *Crawford* v. *Dunbar,* 52 Cal. 36; *People*
v. *Rodgers,* 118 Cal. 396, [46 Pac. 740, 50 Pac. 668] ; *Camp-
bell* v. *Free,* 7 Cal. App. 151, [93 Pac. 1060] ; note to *State*
v. *Bell,* 124 Am. St. Rep. 211; note to *Sanders* v. *Rice,*
L. R. A. 1918C, 1157.) We can see no good reason why this
rule is not applicable to primary elections. There is support
in some authorities for an exception to this rule to the effect
that in a case where votes are cast by voters for an ineligible
candidate with full knowledge on their part of his ineligibil-
ity, or for one who is dead with full knowledge of his death
(see *State* v. *Frear,* 144 Wis. 79, [14 Am. St. Rep. 992, 128
N. W. 1068]), they may be disregarded altogether, and
treated as nullities, with the result that the person receiving
the next highest vote may be held to have received the highest
number of lawful votes. But this exception is necessarily
and avowedly based on a theory that the votes are knowingly
cast under such circumstances that they may fairly be held
to be mere nullities—cast with full knowledge that they
cannot be effective for any purpose. We have no such situa-
tion in this case. Those of the Democratic party who voted
for Mayor Rolph voted for one whose name was lawfully on
the primary ballot and who was conditionally eligible to re-
ceive the Democratic nomination. In view of the law, of
course, they must be presumed to have known, as is alleged in
the petition, that he could receive the Democratic nomination
only in the event that he was also nominated by the Republi-
can party, but they nevertheless chose to vote for him as the
law contemplated they might lawfully do. To our minds we
would not be warranted in disregarding their votes as mere
nullities. The result necessarily is that as to the office of Gov-
ernor there was no nomination made by the Democratic party
at the primary election.

3. As to the claim that petitioner is entitled to be the nomi-
nee of the Democratic party by virtue of his selection by the

Democratic State Central Committee: Prior to the amend-
ments made to the Primary Act in 1917, a party committee
was empowered to fill vacancies on the ticket of the party oc-
curring after the holding of the primary election in all but
two specific cases. In 1917, section 25 of the act was so
amended as to prohibit the filling of any vacancy on a party
ticket, resulting from any cause whatever, except in the single
case of a vacancy by reason of the death of the candidate oc-
curring after the holding of the primary election. In such a
case only is the party committee authorized to select a candi-
date of the party for the general election. The language of
the section, which is one devoted wholly to the matter of
"vacancies," is such as not to fairly admit of any other con-
struction. It is expressly provided that "the vacancy
created," among other things, "by reason of the failure of a
party to nominate any candidate for the office at the primary
election, or for any other cause except the death of the
candidate occurring after the primary election, shall not be
filled." It is clear that the term "vacancy," as used in this
section, refers to any case where, from any cause, there is no
nominee of the party for an office. It seems plain to us that
if this provision is a valid enactment, it must be held that
the party committee was without authority to make petitioner
the nominee of the party. It is claimed by learned counsel
that it is violative of our constitution. We are of the opinion
that it cannot fairly be so held. The plain object of the pro-
vision was to prevent any departure from or evasion of one
of the main purposes of the primary law, that of requiring
all party nominations to be made directly by the members of
the party at a primary election. Authorization to the party
committee to fill a vacancy was, therefore, confined to the
single instance of the death of the candidate after the primary
election. Certainly we cannot hold that the legislature was
not warranted in concluding that the provision was a reason-
able and necessary provision to make in this behalf.

We can see no warrant for disregarding the plain terms of
the primary law that are involved in this proceeding. To any
complaint that is made concerning their practical effect we
can only say that they are a part of the law of the land, au-
thorized by the constitution itself, which embodies the will of
the people of the state expressed directly by the popular vote
on the proposition.

From what we have said it follows that the respondent properly refused to comply with the demand of the petitioner.

The order to show cause is discharged and the proceeding dismissed.

. Richards, J., *pro tem.*, Shaw, J., Lorigan, J., Sloss, J., Wilbur, J., and Melvin, J., concurred.