[S. F. No. 9605. In Bank.—October 4, 1920.]

JAMES S. EDWARDS, Petitioner, v. FRANK C. JORDAN, as Secretary of State, etc., Respondent.

[1] ELECTIONS — DIRECT PRIMARY LAW—POLITICAL PARTY QUALIFIED TO PARTICIPATE—FILING OF NOMINATION PAPERS UNNECESSARY—CONSTRUCTION OF AMENDMENT OF 1917.—The addition of 1917 to subdivision 7 of section 5 of the Direct Primary Law, which provides that every political party qualified to participate in the primary election by the provisions of subdivision 9 of ,section 1 of the act, for nomination by which party there shall have been filed nomination papers for one or more candidates containing a sufficient number of signatures, shall be entitled to a separate party ticket at the primary election, but all such party tickets must be alike in the designation of candidates for judicial, school, county, and township offices, is not to be construed as a declaration by the legislature that no party "qualified to participate" in the primary may do so unless nomination papers with sufficient signatures

have been filed in the office of the Secretary of State, but is rather an affirmative declaration as to the right of all parties participating to "a separate party ticket" at the primary election, with the proviso that all such tickets must be alike in the designation of candidates for judicial, school, county, and township offices.

[2] Id.—Fundamental Purpose of Primary Law.—The fundamental purpose of the Direct Primary Law is to give every elector affiliated with any political party the power and opportunity to directly participate in the nomination of the candidates of such party by voting for whomsoever he desires for any nomination by the party, and this, as shown by the provisions of the act for a blank for the writing in by the voter of a name not printed on the ballot, entirely regardless of whether the name of his choice is printed on the ballot as the result of nomination petitions having been filed for him at the candidate's own instance or at the instance of a group of his advocates.

[3] Id.—Right of Voters to Separate Party Ballot—Writing in of Names of Candidates—Intention of Legislature.—In view of the mandatory provision of subdivision 1 of section 12 of the Primary Law, which declares a separate official ballot for each political party shall be printed and provided for use at each voting precinct, and of the provision of section 17, that the voter shall receive the official primary election ballot of the political party designated in his affidavit of registration and no other, it was the intention that a party ticket should be provided for the affiliated members of every political party qualified to participate in the primary with blank spaces thereon for the writing in of any name not printed on the ticket, notwithstanding nomination papers were not filed in the office of the Secretary of State.

[4] Id.—Filling of Vacancies—Construction of Term "Candidate." The term "candidate" as used in the amendment of 1919 to section 25 of the Primary Law, relating to the filling of vacancies on a party ticket caused by disqualification of a candidate, is not confined to one for whom nomination papers were filed, but includes any person lawfully selected at the primary by the voters of a party as its nominee.

[5] Id.—Unsuccessful Candidacy for Party Nomination—Successful Candidacy for Different Party Nomination — Filling of Vacancy.—Where a candidate for the Republican party nomination for the office of United States senator was legally nominated as the Prohibition party candidate for such office by the "write-in method," and was unsuccessful in obtaining his own party nomination, there was created a vacancy on the Prohibition party ticket under section 23 of the Primary Law, which, in view of the amendment of 1919 to section 25, the state central committee of the Prohibition party had the right to fill by the selection of such defeated candidate.

APPLICATION for a Writ of Mandate to require the Secretary of State to file certificate of nomination of candidate for political office and to certify candidacy to county clerks and registrars of voters. Granted.

The facts are stated in the opinion of the court.

J. E. Pemberton and Dozier & Dozier for Petitioner.

U. S. Webb, Attorney-General, and Robert W. Harrison, Chief Deputy Attorney-General, for Respondent.

ANGELLOTTI, C. J.—In view of the necessity for an immediate decision, judgment has already been given in this matter directing the issuance of a peremptory writ of mandate as prayed in the petition, without the filing of a written opinion, it being stated by us that such an opinion would be filed later.

The application was one for a writ of mandate requiring the Secretary of State to file petitioner's certificate of nomination by the Prohibition Party State Central· Committee as that party's candidate for United States senator at the general election to be held November 2, 1920, and to certify his candidacy to the county clerks and registrars of voters throughout the state, in order that his name shall appear as such candidate on the ballots to be provided by such officers at said general election.

There is no dispute as to the material facts. The Prohibition party was a political party qualified for participation in the primary election held August 31, 1920, by reason of the vote polled at the last general November election for one of its candidates, who was the candidate of such party only, for an office voted on throughout the state. (Subd. 9, sec. 1, Primary Law.) Nomination papers containing a· sufficient number of signatures were not filed for the present primary in the office of the Secretary of State for any candidate for the Prohibition party nomination for any office voted on throughout the state. Nomination papers were, however, so filed for candidates for the Prohibition party nomination for certain congressional district and legislative offices, and in these portions of the state at least a Prohibition party ticket was furnished at such primary with

a blank space for the "writing in" of the name of a candidate under the designation of the office of United States senator. At the primary election the name of A. J. Wallace was "written in" on these ballots in such blank space, as the choice for the Prohibition party nomination for such office, by a sufficient number of voters to make him the nominee of that party for the office. Mr. Wallace, by registration, was affiliated with the Republican party, and at such election was a candidate for the Republican party nomination for that office, his name being printed on the Republican party ballot used at the primary election as such candidate. At the primary election he failed ·to receive the highest number of votes for the Republican party nomination, and by reason of this fact was rendered ineligible as the candidate of the Prohibition party. (Sec. 23, Primary Law.) Petitioner was selected by the state central committee of the Prohibition party to fill the alleged vacancy caused by the ineligibility of Mr. Wallace, the law having been amended since the decision in *Heney* v. *Jordan,* 179 Cal. 24, [175 Pac. 402], so as to permit a vacancy caused by such an ineligibility of a "candidate" to be thus filled. (Sec. 25, Primary Law.)

On behalf of respondent it is claimed by the attorney-general that, in view of the fact that nomination papers for a candidate for the Prohibition party nomination for any office to be voted on throughout the state, were not filed in the office of the Secretary of State, the Prohibition party could not legally participate in the primary election in so far as the nomination of a candidate for United States senator was concerned, notwithstanding that it was "qualified to participate" in such election by reason of its vote at the last preceding election.

This claim is based principally on the language of the concluding portion of subdivision 7 of section 5 of the Primary Law, a portion added by amendment in the year 1917. The subdivision originally was one relative to the method to be followed in ascertaining the total vote and the highest vote polled for Governor at the last preceding gubernatorial election in case of change of political subdivisions. The addition by the amendment of 1917 was as follows: "Every political party qualified to participate in the primary election by the provisions of subdivision nine of section one

of this act, for nomination by which party there shall have been filed nomination papers for one or more candidates containing a sufficient number of signatures, shall be entitled to a separate party ticket at the primary election; but all such party tickets must be alike in the designation of candidates for judicial, school, county and township offices.''

It is to be observed that even if this provision be construed as a declaration by the legislature that no party ''qualified to participate'' in the primary may do so unless nomination papers with sufficient signatures for one or more candidates have been filed, the provision taken literally was complied with as to the Prohibition party, for concededly nomination papers for certain congressional district and legislative district candidates were filed in the office of the Secretary of State.

[1] But we do not believe that the provision should be so construed. It certainly seems that if the legislature had intended to declare that a political party otherwise qualified to participate should be excluded from participation and its members deprived of the opportunity afforded the members of all parties participating to write in the names of such persons as they desired to see nominated, unless nomination papers were filed by a candidate or certain members of the party favoring a particular candidate, it would have so declared in plain and unambiguous terms. As a matter of fact, the provision contains no express prohibition whatever. It is rather an affirmative declaration as to the right of all parties participating to ''a separate party ticket'' at the primary election, with the proviso that all such tickets must be alike in the designation of candidates for judicial, school, county, and township offices. It does not in terms exclude any political party qualified to participate from participating, and in view of the plain purpose and spirit of the Direct Primary Law, we are not warranted in so construing it.

[2] The fundamental idea of the system is to give to every elector affiliated with any political party the power and opportunity to directly participate in the nomination of the candidates of such party by voting for whomsoever he desires for any nomination by the party, and this, as shown by the provisions of the act, entirely regardless of whether the name of his choice is printed on the ballot as

the result of nominating petitions having been filed for him at the candidate's own instance or at the instance of a group of his advocates. This purpose is fully shown by the provisions for a blank for the writing in by the voter of a name not printed on the ballot.

[3] As we read the provisions of the Primary Law, it seems clear to us that it was the intention that a party ticket should be provided throughout the state for the affiliated members of every political party qualified to participate in the primary, entirely regardless of whether or not nomination papers are filed in the office of the Secretary of State. It is to be noted that if it were otherwise we would have the absurd intention attributed to the legislature that affiliated and duly registered members of a party as to which no nomination petitions have been filed could not legally vote at the primary election for the nomination of candidates for nonpartisan offices, including all judicial, school, and county offices, the final selection of the incumbents of which is, in perhaps a majority of cases, practically made at such primary. This is so because it is expressly provided in section 17 of the Primary Law that the voter shall "receive the official primary election ballot of the political party designated in his affidavit of registration (or the nonpartisan ballot, providing no such party was so designated), *and no other.*" (Italics are ours.) If he is registered as a member of a "political party" as that term is defined in the law, the law says plainly and explicitly that he can be given only the official ballot of that party, and that he cannot be given the nonpartisan ballot. While the language in subdivision 1 of section 12 on this matter is slightly different, it means the same thing. Taking the subdivision as a whole the meaning is very clear. It first provides in mandatory terms that "a separate official ballot for each political party shall be printed and provided for use at each voting precinct," all such tickets to be alike, however, in the designation of candidates for judicial, school, county, and township officers (nonpartisan officers). It then provides for a nonpartisan ballot containing only the matter relative to nonpartisan officers, and that one of the nonpartisan ballots "shall . . . be furnished to each registered qualified elector who is not registered as intending to affiliate with any one of the political parties participating in said primary election; but to any

elector registered as intending to affiliate with any political party participating in the primary there shall be furnished, not a nonpartisan ballot, but a ballot of the political party with which said elector is registered as intending to affiliate." Particular stress is laid by respondent on the use of the words "participating in said primary election" as indicating a different meaning, but to our minds these words, which were placed in the law at the same time that section 17 was enacted, mean any party qualified to participate under subdivision 9 of section 1 and designated in the notice of the Secretary of State as so qualified (subd. 1, sec. 4), and for which a separate official ballot "shall be printed and provided for use at each voting precinct." (Subd. 1 of sec. 12.)

This mandatory provision of subdivision 1 of section 12 which we have just referred to would seem to be sufficient in itself to justify our conclusion, for its language is clear and unambiguous. "A separate official ballot for each *political party* shall be printed and provided for use at each voting precinct." (Italics ours.) The term "political party" is defined by subdivision 4 of section 1, and means any party "which has qualified" as therein provided, "for participation" in the primary. As we read the law, this ballot should have designated upon it in the form and manner provided by section 12, every office for which nominations are to be voted for at the primary election in the precinct in which it is to be used, and under the designation of each such office the names of the candidates therefor for whom nomination petitions have been filed, and a blank line for the insertion by the voter of the name of any other person for the nomination for such office, and in the event that nomination petitions have not been filed for any person as a candidate for an office, that there should be simply a blank line under the designation of the office for the insertion by the voter of the name of the person for whom he desires to vote.

Our conclusion on this branch of the case is that those affiliated by registration with the Prohibition party were entitled to participate in the primary election as members of such party in the nomination of a candidate of the party for United States senator, and to nominate such a candidate by

writing in the blank space provided therefor the name of the person for whom they desired to vote.

[4] From what we have said it follows, in view of the admitted facts, that Mr. Wallace was legally nominated as the Prohibition party "candidate" for United States senator at the next general election, and that his ineligibility to qualify as such candidate because of his defeat for the Republican party nomination (sec. 23; Primary Law), created a "vacancy" on the Prohibition party ticket which, in view of the amendment of section 25 in 1919, could be filled by the state central committee of the Prohibition party, unless the provisions of that section in that regard are not applicable to persons nominated by the write-in method without first having nomination papers filed. It is the claim of respondent that they are not applicable in such a situation. This contention is based on the use of the word "candidate" as distinguished from the word "person" used in certain places in the same section (25) with relation to one receiving a nomination without first having nomination papers filed for him and having his name printed on a primary election ballot. The amendment of 1919 with relation to the filling of vacancies, which was designed to meet the situation presented in *Heney* v. *Jordan,* 179 Cal. 24, [175 Pac. 402], where we were obliged to hold that the law, as it then stood, prohibited the filling of a vacancy created by the failure of a candidate to secure the nomination of his own party (sec. 23), expressly provides that a vacancy on a ticket created by reason of the disqualification of a "candidate" under section 23 of the law may be filled in the manner provided in that section. It is urged that the term "candidate" as here used is confined to those for whom nomination papers were filed for the primary. [5] We are of the opinion that this constructon of the word is unwarrantably narrow and technical and altogether opposed to the real spirit of the provision. We find the same word used in the disqualification provision of section 23 itself, the language there being that "no *candidate* for a nomination" (italics ours), who fails to receive his own party nomination shall be entitled to be the candidate of any other political party. Unless Mr. Wallace was a "candidate" for the Prohibition party nomination within the meaning of the term as used in this provision, it would seem that he was not disqualified by his defeat for

the Republican nomination. No one claims this to be the situation, and it is admitted that a vacancy on the Prohibition ticket was created by his defeat for the Republican nomination. In any event we are satisfied that the term "candidate," as used in the vacancy provisions of section 25, includes any person lawfully selected at the primary by the voters of a party as the nominee of such party.

We have discussed the only claims made by respondent on the argument. This opinion is filed in order that our reasons for our conclusion that petitioner was entitled to the relief sought, heretofore announced, may be of record.

Olney, J., Lawlor, J., Shaw, J., Wilbur, J., Sloane, J., and Lennon, J., concurred.