No. 12,231.

ARMSTRONG, SECRETARY OF STATE v. SIMONSON.

Decided October 19, 1928.

Mr. WILLIAM L. BOATRIGHT, Attorney General, Mr. CHARLES ROACH, Deputy, for plaintiff in error.

Mr. FREDERICK P. CRANSTON, for defendant in error.

*En Banc.*

MR. JUSTICE BUTLER delivered the opinion of the court.

THE defendant in error, A. J. Simonson, obtained an alternative writ of mandamus, commanding the plaintiff in error, Charles M. Armstrong, as secretary of state, to accept for filing a certificate nominating Simonson as a

candidate of the Republican Party for the office of state senator for the First Senatorial District, or to show cause why he does not do so. The demurrer of Armstrong to the writ was overruled. He stood upon his demurrer, and thereupon the writ was made peremptory.

The writ discloses this state of facts: At the assembly of the Republican Party, held August 1, 1928, Simonson was designated as a candidate for State Senator. He accepted the designation, his name was placed upon the ballot, and at the primary election, held September 11, he was defeated, one John B. Stephen. being nominated as candidate for the office. On September 29, Stephen died. On October 5, those duly authorized by the Republican Party to fill vacancies, acting in behalf of that party nominated Simonson as the party candidate to fill the vacancy created by Stephen's death. A certificate of such nomination, and Simonson's acceptance thereof, were tendered to Armstrong for filing, but, acting upon the advice of the Attorney General, Armstrong refused to accept them, basing his refusal upon section 5 of chapter 98, Session Laws of 1927, which declares that, "No person who has been defeated as a candidate in a primary election shall be eligible as a candidate for the same office in the next ensuing general election." In his brief, the Attorney General, with commendable frankness, says: "We doubt very much if it was the purpose of this new statute to prevent the second choice of his own party for the nomination for a particular office from receiving the nomination where the first choice of the party ceased through death, or voluntary surrender of the nomination, from being a contender for the office." However, in view of the plain wording of the section, he believed it to be his duty to present the question for judicial determination.

Standing alone, the words, taken literally, would seem to exclude Simonson's name from the printed ballot. But in construing statutes, words are not always to be given their literal meaning. In order to ascertain the

legislative intent, which, when ascertained, must control, words should be considered with reference to the purpose sought to be accomplished by the statute in which they occur. Thus, a statute provided that any "property" omitted by mistake or oversight from the tax list for any year or years, shall be subject to be later assessed for all back taxes properly chargeable thereon. For several years certain property was listed by lot and block number, on the tax list, but there was an omission to extend a special tax levy. It was contended that, as the *property* had not been omitted from the tax list, it could not later be assessed for such back tax, as the omission to extend the special tax levy did not come within the terms of the statute. The court held that, considering its purpose, the statute did apply, saying, "We are of the opinion that while the case before us does not come within the strict letter of the statute, that it does come clearly within its spirit." *Aggers v. People,* 20 Colo. 348, 38 Pac. 386. A statute provided for the appointment of three commissioners to select a site "within the City of Denver for the capitol of said Territory." The site selected and conveyed for the purpose was not within the city, but was sixty feet south of the city limits. It was held that a reasonable construction to be placed upon the words "within the City of Denver" was "at Denver." The court said that, "In view of the nature of the act to be done, the necessity not only for a convenient, but also an appropriate and fitting site for capitol buildings, the difficulty of securing so large a body in any platted city—the construction is not an unreasonable one." *Brown v. State,* 5 Colo. 496.

In order to ascertain to what situation the section in question was intended to apply, we should consider the old law, the mischief and the remedy. A classic example of this manner of construing statutes is given by Blackstone. The Bolognian law, mentioned by Puffendorf, "that whoever drew blood in the streets should be punished with the utmost severity," taken literally, seems to

cover the case of a surgeon who opened the vein of a person who had fallen down in the street with a fit; but it was held that the law did not apply to such a case. 1 Blackstone's Comm. 60.

Coming now directly to the case before us, it is to be noted that the old law permitted a person who had sought a party nomination and was defeated at the party primary election to run as the candidate of a rival party in opposition to the candidate of his own party, and have his name, as the candidate of such rival party, placed upon the general election ballot. Or he could run independently by petition, in which event his name would appear upon the general election ballot, as such independent candidate, in opposition to the candidate of his own party. Under the old law, there was nothing to prevent members of one party from voting at the primary election of a rival party, and it is a matter of common knowledge that at times they availed themselves of that privilege. The mischief of the old law was that under it there prevailed practices that tended to create dissension within the ranks of each political party, lessened party control, weakened party strength, crippled party activity,. and sometimes even threatened the disruption of the party. To eliminate these practices, and to lessen the evils believed to exist, the statute, of which the section in question is a part, provides, among other things, that each voter at a primary election shall openly announce to the judges of election the name of the political party with which he wishes to affiliate (S. L. 1927, c. 98 § 3), and that no person who has been defeated as a candidate in a primary election shall be eligible as a candidate for the same office in the next ensuing general election (section 5). To further carry out the purposes of the statute, it provides also for an increase in the number of votes necessary to designate, at a party assembly, the names of candidates to be placed upon the primary election ballot (section 1). And in the case of a candidate for a state office, the statute makes a radical change, the

practical effect of which is greatly to increase the number of signatures required to place, by petition, the name of such candidate upon the primary election ballot (section 2).

Where a candidate who has been nominated at a primary election dies, the filling of the vacancy by those who are authorized to represent the party, and to act for it in such matter, does not create any of the mischiefs sought to be remedied by the Act of 1927. On the contrary, such action is strictly in harmony with the purposes of that statute.

Our conclusion is that the section in question does not operate to exclude Simonson's name from the general election ballot, and, therefore, that the trial court was right in making the writ peremptory.

The judgment is affirmed.