[S. F. No. 14771. In Bank.—November 30, 1932.]

MAURICE R. NORCOP, Petitioner, v. FRANK C. JOR-
DAN, as Secretary of State, etc., Respondent.

J. F. T. O'Connor, James D. Meredith, Chauncey Tramu-
tolo, Jerome Politzer, Maurice E. Harrison, William P.
Hubbard, Francis C. Brown, Isadore B. Dockweiler and
Morgan V. Spicer for Petitioner.

U. S. Webb, Attorney-General, and Robert W. Harrison,
Chief Deputy Attorney-General, for Respondent.

THE COURT.—This is an application for a writ of man-
date to compel the respondent as Secretary of State to
certify and declare the petitioner to be the duly nominated
candidate of the Democratic party for the office of represen-
tative in Congress for the fourteenth congressional district
of California, and to place the name of petitioner as such
candidate on the official ballot to be used at the general
election to be held on November 8, 1932. In view of the
necessity for an immediate decision in this matter, judgment

was rendered without written opinion on the day oral argument was held, it being stated that an opinion would be filed later.

The petitioner was registered as a member of and was thereafter affiliated with the Democratic party. At the primary election held on August 30, 1932, he was a candidate for the Democratic nomination for Congress in said district and his name appeared on the Democratic ballot as such. He did not seek the nomination of any other party. George W. Rochester was affiliated with the Republican party and sought the nomination for Congress in said district on both the Republican and Democratic tickets. At the primary election Rochester failed to receive the nomination of his own party, but he received the highest number of votes cast on the Democratic ballot. Since he failed to receive the nomination of his own party he is not entitled to be the candidate of any other party at the ensuing general election. (Sec. 23, Direct Primary Law; Stats. 1917, pp. 1341, 1357; *Heney* v. *Jordan,* 179 Cal. 24 [175 Pac. 402].) On the foregoing facts and the law, the petitioner concedes, and properly so, that by reason of the ineligibility of Rochester to receive the Democratic nomination, a vacancy now exists in the matter of the nomination of a Democratic candidate for representative in Congress in said district. (*Heney* v. *Jordan,* 179 Cal. 24 [175 Pac. 402]; *Edwards* v. *Jordan,* 183 Cal. 791 [192 Pac. 856].) The petitioner received the next to the highest number of votes on the Democratic ballot and it is alleged in the petition that the newly elected Democratic state central committee desires to appoint the petitioner to fill such vacancy. The attorney-general makes no point of the fact that the state central committee has not already acted, inasmuch as the controversy has reached the stage where the Secretary of State has notified the petitioner that he will not certify him as the Democratic nominee, nor will he place the name of the petitioner on the general election ballot, even if the state central committee should appoint him to fill the vacancy.

The respondent refuses to take action in the petitioner's favor because of the provisions of subdivision (1) of section 5 and section 25 of the Direct Primary Law. Subdivision (1) of section 5 provides: "Nothing herein shall be considered as prohibiting the independent nomination of

candidates as provided by section 1188 of the Political Code, as said section reads at the time of said nomination; except one whose name has appeared upon the ballot as a candidate of any political party at a primary election held under the provisions of the act, and who is defeated for such party nomination at such primary election, shall be ineligible for nomination as an independent candidate, or as a candidate named by a party central committee to fill the vacancy as provided in section 25 of this act for the same or any other office at the ensuing general election. . . . '' Section 25 provides that the vacancy created on account of the ineligibility of a person to qualify as a candidate because of the inhibitions of subdivision (1) of section 5 of the act, or for any other cause, shall not be filled except in the following cases: ''1. By reason of the death of a candidate occurring at least twenty-five days before the date of the next ensuing November election. 2. By reason of the disqualification of a candidate occurring on account of the failure of such candidate to secure nomination in his own party as required by section 25 of this act.''

The question to be determined is whether the petitioner is a defeated candidate within the meaning of subdivision (1) of section 5. If so, he is ineligible for nomination as a candidate to be named by the party state central committee, and the latter is without power to name him under the inhibitions of section 25.

In *Narver* v. *Jordan,* 173 Cal. 424 [160 Pac. 245, 246], it appeared that Henry Stanley Benedict was a candidate for the Republican nomination for representative in Congress from the tenth congressional district. At the primary election he failed of that nomination. No candidate for the Progressive party nomination for that office appeared on the ballot. Benedict's name was written in for such nomination in the blank spaces provided therefor by a sufficient number of electors to make him the Progressive party nominee for the office, if he was eligible as such. A proceeding in *mandamus* was initiated to compel the Secretary of State to omit his name from the certification of nominees. The court stated: ''It must be held that he filed nomination papers as a candidate for the Republican party nomination, and he was defeated for such party nomination at the primary election. . . . '' There was nothing, however, in

the then state of the law, to prevent a "write in" nomination for the office by the electors of another party and the peremptory writ was denied. The declaration by this court in 1916 that under circumstances identical with those presented in the present proceeding Benedict was "defeated" for his own party nomination is persuasive that the word "defeated" was employed by the legislature in the same sense and to the same effect as used by this court when in 1919 the term "defeated" was incorporated in an amendment to the Direct Primary Law. (Sec. 5, subd. 9, Stats. 1919, pp. 39, 48.)

It is argued that in order that the petitioner be declared defeated there must have been a nomination on the Democratic ticket; that Rochester was not nominated, and that therefore there was no candidate who was defeated for the Democratic nomination. There would seem to be at least two answers to the argument. First, it seems clear that a candidate who was not nominated was for all purposes defeated for such nomination. The petitioner submitted his name to the Democratic electors for nomination. Those electors assembled at the polls and rejected him by casting more votes for one of his opponents on that ticket. The petitioner concededly was not nominated. No other conclusion seems reasonable or possible than that he was defeated for that nomination. Secondly, considerable confusion has arisen by failure to distinguish between nomination and eligibility. Mr. Rochester was eligible as a candidate for the Democratic nomination. His name was lawfully on the primary ballot. He was eligible to receive the Democratic nomination conditionally. (*Heney* v. *Jordan*, 179 Cal. 24, 30 [175 Pac. 402].) He received that conditional nomination, and by reason thereof no one else received such nomination, conditional or otherwise. But the condition was not fulfilled by reason of his failure to receive the nomination of the party with which he was affiliated. Because the condition was not met he is deprived of the right under present law to run at all for the office. If per chance his nomination had been recognized and his name were to be placed on the ballot and he should be elected, he could serve out his term as a *de facto* officer if his right to the office were not challenged. (*Oakland Paving Co.* v. *Donovan*, 19 Cal. App. 488, 496 [126

Pac. 388]; 46 C. J., p. 1056.) That he may not now go forward to the general election on the Democratic ticket is because of express statutory law prohibiting it. It is conceded that his opponent, the petitioner herein, was not nominated conditionally or otherwise, and because of that fact the petitioner must be deemed defeated for such nomination as contemplated by our statute.

Decisions from other states are cited and relied upon by the petitioner, notably *Armstrong* v. *Simonson*, 84 Colo. 472 [271 Pac. 627, 628], and *Halteman* v. *Grogan*, 233 Ky. 51 [24 S. W. (2d) 921]. In the Armstrong case Simonson had been a candidate for nomination to the office of state senator. At the primary he was defeated by one Stephen who shortly after his nomination died. The party committee, duly authorized in proper cases, nominated Simonson to fill the vacancy. The Colorado law provided that "no person who has been defeated as a candidate in a primary election shall be eligible as a candidate for the same office in the next ensuing general election". It was held that, although the language of the statute taken literally would seem to exclude Simonson's name from the general election ballot, the purpose of the statute was not to permit "a person who had sought a party nomination and was defeated at the party primary election to run as a candidate of a rival party in opposition to the candidate of his own party, and have his name, as a candidate of such rival party, placed upon the general election ballot". Under the prior law he could do so, or he could run under the old law independently by petition, in which event his name would appear on the general election ballot, as such candidate, in opposition to the candidate of his own party. The court concluded that Simonson was not a defeated candidate within the meaning of the new law under the facts presented. It was directly stated by the court that Simonson was "defeated" at the primary election and there was no direct and positive provision, such as we find in the California law, prohibiting a party committee from nominating a candidate who was defeated at the party primary. If the Colorado law had contained the same prohibition as the California law, undoubtedly the Supreme Court of that state would have given it recognition as an expression of the legislative will.

In the Halteman case Grogan was a candidate for the nomination for magistrate in the fourth magisterial district in McCracken County. One Mattison was also a candidate for the same nomination and received more votes than Grogan at the primary election. Grogan contested Mattison's right to the nomination on the ground that he was not a resident of the magisterial district and Mattison filed a counter contest against Grogan on the ground that the latter had not filed an account of his election expenditures as required by law. The trial court adjudged that Mattison was ineligible to receive the nomination because of nonresidence, and that Grogan had forfeited his right to the nomination by reason of his failure to file his preprimary statement of expenses. No appeal appears to have been taken from said judgment. Thereafter the Democratic party committee selected Grogan to fill the vacancy and his name was placed on the general election ballot. Halteman announced himself as an independent "write in" candidate and received 75 votes. Grogan received 868 votes and was awarded a certificate of election. Halteman contested Grogan's right to the certificate of election under the Kentucky statute, which provided that no candidate for a public office in the state "who shall have been defeated for the nomination for an office" should be permitted to run for the same office at the general election. The trial court dismissed the contest and the judgment was affirmed by the court of appeals, which held that Mattison was ineligible to receive the nomination by reason of nonresidence in the district and all votes received by him were void; that Grogan had not been defeated by Mattison in the sense that the term "defeated" was used in the statute; that if Grogan had received a certificate of nomination it would have been valid notwithstanding his failure to file his expense account, and that in any event Grogan was entitled to a certificate of election. The determination that Grogan was not a defeated candidate at the primary election as contemplated by the statute appeared to rest upon the premises that as he was the only eligible candidate for the nomination at the primary and as he received the highest number of votes of those eligible, a certificate of nomination if issued to him would have been valid. Such is not the law of this state. (*Heney* v. *Jordan,* 179 Cal. 24, 30 [175 Pac. 402].) Furthermore, Mattison was

not conditionally eligible for nomination as was Rochester in the present case. The votes cast for Rochester were valid votes and would have been effective to place him in nomination by the Democratic party if he had also received his own party nomination. When the statutory laws in Colorado and Kentucky are scrutinized, it is at once apparent that there was no attempt to provide therein for the contingencies which have with particularity been provided for in this state. Our law is plain, certain and unambiguous and as such can admit of no interpretation other than that which its plain language signifies. (*Heney* v. *Jordan, supra.*) The obvious purpose of our law is, at least in part, to prevent a party committee, constituting as it does a small group of the members of that party, from imposing upon the electors a candidate of that party who had been rejected by the members thereof assembled at the polls at the primary election.

The peremptory writ is denied and the alternative writ is discharged.

PRESTON, J., Dissenting.—I dissent.

Without intending to inject Holy Writ into a political tangle, I base this dissent upon the doctrine that the ''Letter killeth but the Spirit giveth life.''

The word ''defeated'' when interpreted as in the majority opinion, corrects no evil and serves no purpose except to injure the applicant in favor of others who have in no sense been injured by him. It may curtail the prerogative of the electors of the Democratic party by refusing them the right to select their own candidate, thus favoring the opposing party nominee when no just claim to preference can exist.

Rochester's ineligibility left no nominee for Congress of the Democratic party. There was, of course, in no true sense anyone defeated for the nomination in that party. Why not allow the second in the running or anyone other than Rochester to have the place if the committee selects him? Statutes should receive a reasonable interpretation in the light of the abuses at which they are aimed. This question was considered at length in *People* v. *Ventura Refining Co.,* 204 Cal. 286 [268 Pac. 347, 349, 283 Pac. 60] ; the California cases are there collated, the old law Bologna case is cited and the court then quotes with approval the following

remarks of Mr. Justice Field used in *United States* v. *Kirby,* 7 Wall. 482 [19 L. Ed. 278] : "All laws should receive a sensible construction. General terms should be so limited in their application as not to lead to injustice or oppression or an absurd consequence. It will always be presumed that the legislature intended exceptions to its language which would avoid results of this character. The reason of the law in such cases should prevail over its letter."

Two courts of last resort have made a proper interpretation of similar statutes. In the case of *In re Halteman* v. *Grogan,* 233 Ky. 51 [24 S. W. (2d) 921, 922], Grogan, a candidate at the August, 1929, primary election for magistrate, was defeated by Mattison, who was later declared ineligible. Grogan was appointed nominee by the Democratic county committee, but it was claimed that his defeat rendered him ineligible under a Kentucky statute providing that no candidate, having filed his application, and having been defeated for the nomination thereunder, should be eligible for the same office for which he was a candidate, at any general election held during the year his application was so filed and in which he was a candidate in any primary election under the act. The Supreme Court, however, held that Grogan was not defeated for the nomination in the sense that that term was used in said statute, stating: "This provision was primarily intended to prohibit a candidate, who had filed his application . . . and who had received fewer votes than another candidate, from becoming a candidate at the general election against a candidate who had defeated him in the primary election. Grogan was not defeated by Mattison in the primary election, since Mattison was ineligible to become a candidate for the Democratic nomination for the office and all votes received by him were void."

Again, in the case of *In re Armstrong, Secretary of State,* v. *Simonson,* 84 Colo. 472 [271 Pac. 627, 628], one Stephen defeated Simonson for state senator at the primary election and thereafter died, whereupon the Republican party designated Simonson for the office. Pursuant to a statute which declared that no person defeated as a candidate in a primary election should be eligible as a candidate for the same office in the next ensuing general election, the Secretary of State refused to accept the certificate of nomination from Simon-

son. The court said: "Standing alone, the words taken literally, would seem to exclude Simonson's name from the printed ballot. But, in construing statutes, words are not always to be given their literal meaning. In order to ascertain the legislative intent, which, when ascertained, must control, words should be considered with reference to the purpose sought to be accomplished by the statute in which they occur. . . . In order to ascertain to what situation the section in question was intended to apply, we should consider the old law, the mischief and the remedy. A classic example of this manner of construing statutes is given by Blackstone. The Bolognian law, mentioned by Puffendorf, 'that whoever drew blood in the streets should be punished with the utmost severity', taken literally, seems to cover the case of a surgeon who opened the vein of a person who had fallen down in the street with a fit; but it was held that the law did not apply to such a case. (1 Blackstone's Comm. 60.) Coming now directly to the case before us, it is to be noted that the old law permitted a person who had sought a party nomination and was defeated at the party primary election to run as the candidate of a rival party in opposition to the candidate of his own party. . . . Where a candidate who has been nominated at a primary election dies, the filling of the vacancy for those who are authorized to represent the party, and to act for it in such matter, does not create any of the mischiefs sought to be remedied by the act of 1927. On the contrary, such action is strictly in harmony with the purposes of that statute. Our conclusion is that the section in question does not operate to exclude Simonson's name from the general election ballot and therefore that the trial court was right in making the writ peremptory."

It is clear to my mind that here the writ should have issued as prayed.