[L. A. No. 19198. In Bank. Feb. 16, 1945.]

HENRY B. DIERKES, Appellant, v. CITY OF LOS ANGELES et al., Respondents.

Edward C. Purpus and Morris Lavine for Appellant.

Ray L. Chesebro, City Attorney, and Robert J. Stahl, Deputy City Attorney, for Respondents.

SCHAUER, J.—In this case plaintiff, a retired police officer of the city of Los Angeles, seeks a writ of mandate to compel the city to pay him a retirement pension, to which he claims to be entitled under certain provisions of the Los Angeles City Charter. Named as defendants are the city, its board of pension commissioners and the members thereof, and the mayor, the treasurer, the city clerk, and the city controller. The trial court, upon uncontroverted facts set forth in the pleadings, determined that "plaintiff . . . is not presently entitled" to the pension which he seeks and rendered judgment for defendants. From such judgment plaintiff now appeals and we have concluded that it cannot be sustained.

Section 181 of the Charter of the City of Los Angeles (Stats.

1927, p. 2020) provides that "Any member of the Fire or Police Department [of such city] . . . after twenty years' aggregate service, on request of such member . . . shall be retired and paid in equal monthly installments . . ." a pension, the amount of which is not here disputed.

Section 180 of such charter (Stats. 1927, p. 2020) provides that "The Board of Pension Commissioners shall administer the fire and police pension system of the city, and have exclusive control of the administration . . . of the fire and police pension fund. . . ."

Section 189 of the charter (Stats. 1927, p. 2026) provides that "In computing the time of service for retirement the amount of time served in the United States Army, Navy, Marine Corps, or any division thereof, in time of war, by any member of the Fire or Police Department, who shall have left such department to enter the United States Army, Navy, Marine Corps, or any division thereof, and who shall have returned to such department within a period of one year after having been honorably discharged from such service, shall be counted as a part of the aggregate service required for a retirement pension."

Section 17 of the charter (Stats. 1941, p. 3407) reads as follows: "Notwithstanding any other provision of this charter, every officer or employee called into active service in the armed forces of this state or of the United States, during time of war . . ., shall, during the period of such service . . . and for a period of ninety (90) days from and after his discharge or release from such service, be considered as being on leave of absence from the service of the city of Los Angeles, provided that no such leave of absence shall be allowed in the case of any person who is dishonorably discharged from the service to which he was called. . . . In addition to credit for time served in the United States Army, Navy, Marine Corps, and any division thereof, in time of war as allowed under the existing provisions of Sec. 189 and subdivision (d) of Sec. 513, credit shall be given for periods of military leave as provided in this section to the same extent and with like force and effect as now allowed for war service under the charter sections hereinabove mentioned."

Subdivision (d) of section 513 of the charter (Stats. 1937, p. 2955) sets out provisions for war service credit similar to those contained in section 189 and makes them applicable to "any member" of the City Employees' Retirement System.

The section is only analogically pertinent to the question at bar and does not affect the discussion or result herein.

Plaintiff became a member of the Los Angeles Police Department on August 15, 1922, and, except for a fourteen-day absence on leave without pay, he continued in the actual performance of his duties as such until August 28, 1941, an aggregate period of nineteen years less one day. Prior to his employment as a member of the police department plaintiff had served in the United States Navy for a period of sixteen years and was, under Navy regulations, a member of the Fleet Reserve of the Navy and liable to call to active duty in case of war or national emergency. In 1937 plaintiff was placed on retired status in the Navy, but under the law and regulations continued to be liable to call to active duty in time of war or national emergency. On August 28, 1941, he was recalled to active duty with the Navy and continued upon such duty until November 20, 1942, on which date he was released therefrom for the purpose of resuming his duties as a member of the police department and claiming a retirement pension. If he was entitled under any of the provisions of the charter hereinabove quoted to have the time of his active duty with the Navy (subsequent to August 28, 1941) credited to his city service, then the twenty-year period became complete on August 29, 1942, and at any time after that date he was entitled to the pension upon application for it.

On approximately November 24, 1942, plaintiff reported for duty with the Los Angeles Police Department and thereafter actually served as a member thereof until December 2, 1942. On November 27, 1942, he applied to the board of pension commissioners for a retirement pension to commence on December 3, 1942. On December 15, 1942, he was recalled to active service with the Navy and was still so engaged at the time of the trial of this case. On April 8, 1943, the Board of Pension Commissioners of the City of Los Angeles denied his application for retirement pension, and on May 24, 1943, he filed his petition for writ of mandamus in the court below, which proceeding, upon trial, resulted in the judgment for defendants from which this appeal is taken.

Defendants seek to uphold the trial court's judgment through a literal reading and strict application of the provisions of section 189. They would, in fact, as is hereinafter discussed in more detail, have us extend the application of section 189 (adopted in 1927) as interpreted by them to con-

trol and limit the operation of the later (1941) adopted section 17. They also contend that plaintiff's transfer from active duty to inactive status in the Naval Reserve after honorable service therein and his return to and actual service in the police department from November 24 to December 2, 1942, should be held not to bring the plaintiff within the status of one "who shall have returned to such [police] department within a period of one year after having been honorably discharged from such service." None of defendants' contentions can be upheld.

It is a general and well recognized rule that pension provisions of the type here involved shall be liberally construed in favor of the applicant. (*Gibson* v. *City of San Diego* (1945), *ante,* p. 930 at p. 935 [156 P.2d 737, 740].) Admitting such general rule, it is pointed out in behalf of defendants that the provisions of section 189 of the Los Angeles City Charter, with which we are now concerned, are not in all respects as ambiguous and uncertain as are those of section 184(a) of the San Diego City Charter, which we were considering in the San Diego case, and hence, it is contended, there is no room for construction of the Los Angeles charter provisions.

It may well be observed that the provisions of section 189 of the Los Angeles City Charter cannot be said to be wholly complete and certain in their application to the facts of this case. They do not specifically cover the case (which we have here) of a member of the police or fire department who has served the city for nearly all (approximately nineteen twentieths) of the time required for a pension and who in time of war goes from such service into the Army or Navy and there completes, with the credits allowed for such war service, the time of service required for a pension. There appears to be no good reason for such an employe to return to the city department; no further city service can be exacted of him. These considerations point to the same conclusion here as was reached in the San Diego case; i.e., that the phrase "and who shall have returned to such department within a period of one year after having been honorably discharged" from war service should be construed to apply only to those whose "time of service required for retirement" has not been completed at time of discharge (or release, see *infra*) from active military duty. There is, however, in this case, as related above, the additional fact that the plaintiff was temporarily transferred from active to inactive status in the

reserve and returned to his city police duties, and there are, in the Los Angeles City Charter, the provisions of section 17, above quoted, which did not appear in the San Diego Charter. Giving effect to that additional fact and these provisions, regardless of whether the provisions of section 189, standing alone, would require the construction indicated, we are satisfied that plaintiff's right to receive the pension is conclusively established.

Preliminarily it may be stated that the general discussion in the San Diego case in respect to the purposes and objects of the military service-credit provisions applies with equal force here. Likewise here it is our duty to avoid, if reasonably possible, a result which would upon a purely arbitrary basis (the fact that the particular employe-veteran was given an "honorable discharge" instead of being transferred without discharge to inactive status in a reserve corps) confer credit benefits upon some city employe-veterans who had served the nation honorably in the armed forces (and had been "discharged") while denying such benefits absolutely to other city employe-veterans who had served equally honorably in the armed forces (but who had been transferred to inactive status in the reserve corps or retired instead of being discharged).

We are satisfied that the words "honorably discharged from such service" must be construed to mean, in a proper case, honorably *relieved, released, transferred, or retired from active duty status,* and, hence, that the plaintiff herein, when he resumed the discharge of duties in the police department on November 24, 1942, under the circumstances hereinabove related, fulfilled all the requirements of section 189 which are applicable to a city employe-veteran whose time of service for a police pension is not otherwise complete. But this is not the only basis upon which plaintiff is entitled to the relief sought.

Section 17 of the Los Angeles City Charter was adopted in 1941. It is, in effect, amendatory or augmentative of section 189, adopted in 1927. Section 17 (hereinabove quoted more fully) declares that "Notwithstanding any other provision of this charter, every officer or employee called into *active service* [in the armed forces] . . . during time of war . . . . shall, *during the period of such service* . . . and for a period of ninety (90) days . . . after his discharge *or release* from such service, be considered as being on leave of

absence from the service of the City . . . In addition to credit for time served in the [armed forces] . . . as allowed under the existing provisions of Sec. 189 . . . *credit shall be given for periods of military leave as provided in this section* to the same extent and with like force and effect as now allowed for war service under the charter provisions hereinabove mentioned.'' (Italics added.)

The purposes of this amendment seem obvious. Its provisions at least impliedly recognize that an employe may be on a reserve status in the armed forces and ''called into active service'' and that after honorable service, he may receive a ''release from such service'' rather than a discharge. Its purpose, clearly, is to liberalize and augment, and perhaps in some respects to construe, the service-credit provisions of section 189. It extends, or recognizes the application of, such service-credit provisions to persons in the reserve corps who may be *released,* rather than *discharged,* from active duty; it confirms recognition of the status of a city employe, absent on military duty, as being on *military leave* and hence as remaining in a limited sense in the employ of the city (see *McCoy* v. *Board of Supervisors* (1941), 18 Cal.2d 193, 199 [114 P.2d 569]; *People ex rel. Happell* v. *Sischo* (1943), 23 Cal.2d 478, 495 [144 P.2d 785, 150 A.L.R. 1431]); it adds ninety days ''after his discharge or release'' from active service to the period of actual active service for which he must be given credit in computing his time of service for a pension; it imposes no requirement of previous discharge from military status, or of release from active duty status, or of return to service with the city, as a condition precedent to operation of the credit on account of time served; rather does it expressly provide that ''*during the period of such service*'' the employe ''shall . . . be considered as being on leave of absence,'' etc., and that ''credit shall be given for *periods* [note the plural] of military leave as provided in this section.''

We find not persuasive an argument of defendants that the proviso that ''no such leave of absence shall be allowed in the case of any person who is dishonorably discharged from the service to which he was called'' necessitates deferring the application of the credit until separation of the employe-veteran from the armed forces. Neither the proviso nor any other part of the section so specifies. The proviso is in derogation or limitation of the rights otherwise conferred and should not be extended by implication. If we would undertake to so

extend it against the rights of a pension applicant we should at once be faced with uncertainty as to how far we ought to extend it. Should we interpret it to require only that the employe-veteran be temporarily or indefinitely released from active duty status without a dishonorable discharge? Or should we exact from him final and complete severance from the service (a status which many might never attain until death)? There could be no absolute certainty that any person remaining on a military status, whether active or inactive, might not eventually be dishonorably discharged. If the quoted proviso is to be interpreted as requiring final and complete severance from military status without a dishonorable discharge then its meaning in this respect is exactly the same as that ascribed by defendants to the quite different language in section 189. We are satisfied that under proper rules of construction we should not enlarge the scope of the proviso to defeat rights otherwise conferred by section 17.

It has also been suggested that the concluding language of section 17 providing that "credit shall be given for periods of military leave as provided in this section to the same extent and with like force and effect as now allowed for war service under the charter sections hereinabove mentioned [§§ 189 and 513(d)]" should be construed as adding nothing to the credit provisions of section 189 except a possible allowance of ninety days extra time after separation from active war service, it being urged that the phrase be interpreted and applied as though it read "credit shall be given for periods of military leave as provided in this section [*only upon the same conditions precedent*] to the same extent and with like force and effect as now allowed for war service under the charter sections hereinabove mentioned." A sufficient answer to this contention is that the inserted words "only upon the same conditions precedent" do not appear in the charter, and the words which do appear there do not reasonably admit of such meaning. The provision that the credit provided for in section 17 shall be given "to the same extent and with like force and effect as now allowed for war service under the charter sections hereinabove mentioned" seems clearly designed neither to define conditions precedent upon which the credit provided for by section 17 shall become operative nor to limit the benefits created by section 17 to those already ordained by section 189 or section 513(d), but rather to ensure that all of the credits independently encompassed by section

17 shall have application and force in their own right equally with and not limited in any way by the provisions of the older sections. It follows, therefore, that by the provisions of section 17 plaintiff became entitled to apply for his pension on August 30, 1942, regardless of discharge or release from active naval duty (so long as he had not been dishonorably discharged) or return to actual service in the police department, and upon the showing here his right had fully matured.

Inasmuch as administration of the pension fund is placed under the exclusive control of the Board of Pension Commissioners of the City of Los Angeles (see § 180 of the city charter) it appears that the mayor, the city treasurer, the city clerk, and the city controller (none of whom are members of such board) are not proper defendants herein, and that the action should be dismissed as to such defendants.

As hereinabove mentioned the material facts are uncontroverted. The judgment is reversed and the cause is remanded with directions to the trial court to amend its conclusions of law (including those set forth in its designated findings of fact) to comply with the views hereinabove expressed and thereupon to render judgment as prayed for by plaintiff against defendants the City of Los Angeles, a municipal corporation, and against the board of pension commissioners of such city and the members thereof, and to dismiss the action as against the other defendants.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., and Spence, J., concurred.

Respondents' petition for a rehearing was denied March 15, 1945.