[L. A. No. 19414. In Bank. Dec. 4, 1945.]

HYRUM C. ENGLAND, Petitioner, v. CITY OF LONG BEACH (a Municipal Corporation) et al., Respondents.

Kenneth Sperry and James C. Webb for Petitioner.

Joseph A. Ball as Amicus Curiae on behalf of Petitioner.

Irving M. Smith, City Attorney, Nowland M. Reid, Assistant City Attorney, and Clifford E. Hayes, Deputy City Attorney, for Respondents.

GIBSON, C. J.—Petitioner, a member of the fire department of the city of Long Beach for more than twenty years, retired and was granted a pension on May 1, 1944, pursuant to provisions of the city charter. The accruing payments, however, have not been made to petitioner because, according to respondents, payments due to pensioners have greatly exceeded the sums paid into the pension fund.

In this proceeding petitioner seeks a peremptory writ of mandate to compel respondents to pay that portion of his pension which is now due. Respondents admit that the sum claimed by petitioner is owing and unpaid and that there is enough money in the hands of the city treasurer to pay him and other pensioners the installments due but contend they have no authority to make such payments until there is sufficient money in the pension fund for that purpose. Petitioner contends, however, that the pension constitutes a general obligation of the city and is not limited to payment from the pension fund.

When the charter was adopted in 1921, the city council was authorized to create a "Relief and Pension Fund"

for members of the police and fire departments. The council, however, failed to exercise these powers, and in 1925 the charter was amended to provide for payment of certain specified pensions. Subdivision 2 of section 187 provided that any member of the fire or police department who served thirty years should, on application, be retired from further service in such department, "and he shall thereafter, during his lifetime, be paid in equal monthly installments from said fund a yearly pension equal to two-thirds of [his] annual salary. . . ." It further provided that after twenty years' aggregate service a member on application "shall be retired and paid in equal monthly installments from said fund a limited pension" equal to fifty per cent of his annual salary. Subdivision 3 provided for certain monthly disability retirement payments, to be paid "from said pension fund." Subdivision 4 provided for pensions for widows or children in case of death, but here no mention was made of the fund as constituting the source of the payments.

Subdivision 6 of section 187 read in part: "For the purpose of creating, maintaining and providing a fund to meet the payment of demands drawn for the payment of pensions . . . a fund is hereby created to be known as 'Relief and Pension Fund.' " It further provided that an actuary should be employed to render a report on the cost of maintaining the pension system on a reservation basis and that an amount based upon the report of the actuary, but not exceeding two per cent of the general tax levy, should be appropriated annually by the city council and paid into the fund, together with the amount of any deficit not exceeding two per cent of the general tax fund. It was also provided that, in addition, certain other specified sums, such as rewards and donations to the departments, should be paid into the fund.

The report of the actuary, appointed as directed by this subdivision, stated that the payment of two per cent of the general tax levy would be wholly inadequate and that an amount equal to at least five and one-half per cent would be required each year to place the pension system on a reservation basis. Thereafter, until 1931, the full two per cent authorized was not paid into the fund, but the city manager and the city council paid into the fund only a sufficient amount to pay such pensions as then became due.

In 1931 section 187 of the charter was again amended.

That portion of subdivision 2 that is pertinent here remained substantially unchanged, but subdivision 6 was completely revised. The amendment eliminated the provisions to the effect that the city manager was authorized to include in his budget an amount to be paid into the pension fund not exceeding two per cent of the general tax levy and that the city council should annually appropriate the amount of any deficit not exceeding two per cent of the general tax levy. Instead, it provided that the city manager "shall include in his annual budget an amount equal to two per cent of the estimated pay of the members of the police and fire departments, as hereinafter provided, and the city council shall appropriate such amount to the 'Relief and Pension Fund.' " It also provided: "There shall be paid into the said fund, the following monies, to-wit: (a) The City Auditor is hereby authorized, and shall deduct and pay into said fund semi-monthly, two per cent of the salary of each member of the police and fire departments; (b) The amount appropriated by the city council, as hereinbefore provided. . . . (c) All contributions, rewards and donations to the police and fire departments for services by any member or members thereof, except amounts of money donated to provide for any medal or permanent competitive award; (d) All fines imposed upon members of the police and fire departments for violations of the rules of said departments; (e) All proceeds from the sale of unclaimed property; (f) All contributions and donations to the said departments NOT specifically designated for interdepartment relief funds. . . ."

Beginning with March, 1931, the city deducted two per cent from the salaries of the members of the police and fire departments, including the salary of petitioner prior to his retirement, which amounts, together with the miscellaneous funds provided, were paid into the pension fund.

In 1944 the voters of the city of Long Beach adopted a charter amendment, effective as of March 29, 1945, repealing section 187 and in effect elimininating all pensions with certain qualifications not pertinent here. Respondents concede, however, that since petitioner retired and was granted a pension prior to March, 1945, the repeal could not operate to deprive him of whatever rights he then had.

The charter provisions must, of course, be interpreted in accordance with the well-recognized rule that all pension laws are liberally construed to carry out their be-

neficent policy. (*Gibson* v. *City of San Diego*, 25 Cal.2d 930, 935 [156 P.2d 737]; *Dierkes* v. *City of Los Angeles*, 25 Cal. 2d 938, 942 [156 P.2d 741]; *Dillard* v. *City of Los Angeles*, 20 Cal.2d 599, 602 [127 P.2d 917].)

■ In our opinion, the pension payments directed to be made by the charter constitute general obligations of the city and are not limited in amount to the sums assigned to the pension fund by subdivision 6.

Subdivision 2 provided that after twenty years' service a fireman, upon his application, "shall be retired and paid in equal monthly installments from said fund a limited pension" of fifty per cent of his annual salary, with a certain additional amount for each year over twenty years and less than thirty years served. As petitioner asserts, this language, considered with the remainder of section 187 of the charter, may reasonably be interpreted to mean that a retiring fireman is entitled to a pension of the amount designated; that it was intended to provide an outright, unqualified pension; and that the words "from said fund," together with the provisions of subdivision 6, were not intended as a qualification or limitation but that the pension fund was created, and payments ordered made therefrom, simply as an orderly and customary means of administering city moneys.

There was no language in the charter which expressly limited pension payments to the money in the pension fund or to the particular items mentioned as sources of income to the fund by subdivision 6 of section 187 as amended in 1931. The only portion of subdivision 6 which might have been held to constitute an express limitation—the reference in the 1925 amendment to an amount not exceeding two per cent of the general tax levy—was eliminated by the 1931 amendment. Respondents urge that if a general obligation had been intended, the voters would have stated specifically that the city should levy a tax sufficient to cover all pension payments. It may be argued with equal force, however, that the voters could, but did not, specify that payments must be made from the pension fund alone.

■ Respondents contend that since subdivision 6 enumerated certain particular sums which were required to be paid into the pension fund, it follows that under the doctrine *expressio unius est exclusio alterius*, the subdivision constituted a limitation or qualification by implication upon respondents' power to use other sources of revenue either to

pay pensions or to maintain the pension fund. The application of the doctrine in this case, however, would constitute the writing into the charter of a restrictive provision that would prevent the complete fulfillment of the basic purpose of section 187, namely, that of paying as they accrue the pensions provided for therein. The rule of construction urged by respondents will not be permitted to defeat this purpose and must yield to the general policy of liberally construing pension provisions in favor of those to whom the benefits are granted.

We must, of course, reject any theory that the provisions of the charter were designed to create an appearance of granting pensions while at the same time withholding the benefits by providing inadequate funds. (Cf. *Gibson* v. *City of San Diego*, 25 Cal.2d 930, 935 [156 P.2d 737], where the court said it was satisfied that the drafters of a charter did not intend to insert a clause which was either meaningless or fraudulent in design.) The insufficiency of the fund may have resulted simply from a mistaken belief that the fund would be adequate or from an intent that it should constitute but a partial source of pension payments with the balance to be made up out of the city's general revenues.

The injustice that would prevail if the provisions relating to the fund were construed to be a limitation on the obligation to pay pensions is apparent. The existence of a pension plan is, of course, a strong factor inducing persons to enter into or remain in a particular employment. Moreover, the employee involved here was required to contribute a portion of his salary to the pension fund. Although provision was made for substantial pensions, the inadequacy of the provisions for maintenance of the pension fund was not apparent from the face of the charter. As before noted, the charter did not expressly limit the obligation of the city to the payment of pensions from the pension fund. It obviously would be unjust to make the payment of pensions dependent upon the solvency of a particular fund, thereby depriving employees of the benefits of the system, unless we were compelled to do so by a clear, positive command in the charter.

Respondents contend that if section 187 had been intended to make pensions general obligations of the city, subdivision 6 would have been a mere surplusage and there would have been no necessity for it. It is clear, however, that purposes

other than that of creating a limitation upon pension payments could reasonably have been intended. It is the customary practice in administering a pension system to place the contributions of the employees and the matching payments in a designated fund. The allotment to the fund of other income specified in subdivision 6 can no doubt be explained by the fact that such sources are related to the business or functions of the departments covered by the pension system. Further, even though it be conceded that the voters believed that the sources of income provided by subdivision 6 would constitute the complete means of meeting pension payments, this would not necessarily mean an intent to prohibit respondents from paying pensions from the general funds of the city in the event of an unforeseen deficit in the pension fund.

The writ is granted and respondents are directed to pay to petitioner the amounts that have accrued on the pension granted to him.

Shenk, J., Edmonds, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.

Respondents' petition for a rehearing was denied January 3, 1946.