LOUIS C. SALZ, APPELLANT, v. STATE HOUSE COMMISSION, AN ADMINISTRATIVE AGENCY OF THE STATE OF NEW JERSEY, RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued September 8, 1954—Decided September 30, 1954.

Before Judges CLAPP, JAYNE and FRANCIS.

*Mr. Kenneth J. Dawes* argued the cause for appellant (*Mr. Mario H. Volpe,* attorney).

*Mr. David C. Thompson* argued the cause for respondent (*Mr. Grover C. Richman, Jr.,* attorney-general).

The opinion of the court was delivered by

CLAPP, S. J. A. D. Louis C. Salz applied to the State House Commission for a pension by reason of service with the State Police from 1922 to 1942 and since then with the U. S. Army. Presently he is a lieutenant colonel. The pension was denied, reserving to him, however, the right to reapply therefor without prejudice upon his return from the Army. He appeals.

*N. J. S. A.* 53:5–2.1, effective in 1949, the statute on which Col. Salz relies, requires a state policeman to be retired, and a pension to be paid him, if he is 55 years of age and has 25 years of service. Col. Salz became 55 in 1949, and he claims that for the purpose of calculating the 25 years of service, time spent in the Army since 1942 is the equivalent of time spent with the State Police. *N. J. S. A.* 38:23–5. Further, he points out that the requisite contributions to the State Police Retirement and Benevolent Fund were made by him until July 1, 1942, when *N. J. S. A.* 38:23–6 became effective, and since then on his behalf by the State under that statute.

*N. J. S. A.* 38:23–4 is, we think, controlling. The statute, so far as applicable here, directs that where a person in the service of the State enters the Army in time of war, he shall be granted a certain leave of absence; and, further, that during the period of that leave of absence he shall be entitled to all the rights, privileges and benefits he would have had or acquired had he actually been in service with the State

Police, "except, unless otherwise provided by law, the right to compensation."

In short, the statute bars (1) "compensation," (2) "during the period of such leave of absence," (3) "unless otherwise provided by law." We shall look at these three matters in that order.

■ We think *compensation* includes a pension. For one thing, by the use of the word "pay" in the next sentence in *N. J. S. A.* 38:23–4, there is a fairly clear indication that in this statute *compensation* is not equivalent to *pay*. But much more significant are the many cases holding that the compensation of a public employee includes his pension. *Hayes v. Hoboken*, 93 *N. J. L.* 432, 433 (*E. & A.* 1919); *Emanuel v. Sproat*, 136 *N. J. L.* 154 (*Sup. Ct.* 1947), affirmed 137 *N. J. L.* 610 (*E. & A.* 1948); *Passaic National Bank & Trust Co. v. Eelman*, 116 *N. J. L.* 279, 283 (*Sup. Ct.* 1936); *Gibson v. City of San Diego*, 25 *Cal. 2d* 930, 156 *P. 2d* 737 (*Sup. Ct.* 1945); *Voorhees v. City of Miami*, 145 *Fla.* 402, 199 *So.* 313 (*Sup. Ct.* 1940); *People ex rel. v. Abbott*, 274 *Ill.* 380, 113 *N. E.* 696 (*Sup. Ct.* 1916); *Giannettino v. McGoldrick*, 295 *N. Y.* 208, 66 *N. E. 2d* 57 (*Ct. App.* 1946); *Quam v. City of Fargo*, 77 *N. D.* 333, 43 *N. W. 2d* 292 (*Sup. Ct.* 1950).

■ So, *N. J. S. A.* 38:23–4 bars a pension during a certain period—"the period of such leave of absence." Under the statute this period shall extend during active military service "and for a further period of three months after receiving [a] discharge from such service." *Discharge* from service is to be construed as including relief, release, transfer or retirement from active duty status by military authorities. *Dierkes v. City of Los Angeles*, 25 *Cal. 2d* 938, 156 *P. 2d* 741 (*Sup. Ct.* 1945); *Quam v. City of Fargo*, 77 *N. D.* 333, 43 *N. W. 2d* 292 (*Sup. Ct.* 1950), *supra; cf. U. S. v. Sweet*, 189 *U. S.* 471, 473, 23 *S. Ct.* 638, 47 *L. Ed.* 907 (1903); *Denby v. Berry*, 263 *U. S.* 29, 44 *S. Ct.* 74, 68 *L. Ed.* 148 (1923); *Stephens v. Civil Service Comm.*, 101 *N. J. L.* 192, 198 (*E. & A.* 1924). Thus it may be said to be within the contemplation of *N. J. S. A.* 38:23–4 that, *unless otherwise*

*provided by law,* Col. Salz is to be denied a pension until after his separation from active military service.

The phrase in *N. J. S. A.* 38:23-4, "unless otherwise provided by law," we think has reference to other statutes dealing with military service. There is no such statute controlling here. The phrase stated does not, as Col. Salz contends, apply to a statute such as *N. J. S. A.* 53:5—2.1 which is operative without regard to such service.

So we reach the conclusion that *N. J. S. A.* 38:23–4 bars the payment of a pension until after Col. Salz has been separated from active duty status in the Army.

It is true that pension statutes should be construed liberally. *Bederski v. Policemen's and Firemen's &c. Newark,* 4 *N. J. Misc.* 637 (*Sup. Ct.* 1926), affirmed 104 *N. J. L.* 163 (*E. & A.* 1927); *Ghesquier v. Fire & Police &c. Paterson,* 117 *N. J. L.* 327 (*Sup. Ct.* 1936); 70 *C. J. S., Pension,* § 2, p. 425. And the same is true of statutes such as *N. J. S. A.* 38:23–4 and 38:23–5 which were enacted for the benefit of public employees who enlist or are drafted in time of war or emergency. *Gibson v. City of San Diego,* 25 *Cal.* 2d 930, 156 *P.* 2d 737 (*Sup. Ct.* 1945), *supra; Quam v. City of Fargo,* 77 *N. D.* 333, 43 *N. W.* 2d 292 (*Sup. Ct.* 1950), *supra; cf. Fishgold v. Sullivan Drydock & Repair Corp.,* 328 *U. S.* 275, 285, 66 *S. Ct.* 1105, 90 *L. Ed.* 1230 (1946). But, as the cases hold, such a liberal construction is put upon the statutes only to effect the legislative purpose. It would be license, not liberality, to reject that purpose. *Massari v. Accurate Bushing Co.,* 8 *N. J.* 299 (1951); *Adams v. Atlantic County,* 137 *N. J. L.* 648 (*E. & A.* 1948). *Cf. People v. Calderwood,* 333 *Ill. App.* 541, 77 *N. E.* 2d 849 (*App. Ct.* 1948); *Batchelor v. Newness,* 145 *Ohio St.* 115, 60 *N. E.* 2d 685 (*Sup. Ct.* 1945). We think the legislative purpose stated in *N. J. S. A.* 38:23–4 with respect to the matter of compensation does not warrant the payment of the pension sought here until after Col. Salz's separation from active military service.

A provision precluding a pension from public funds to a public employee still in governmental service is by no means

unusual. In other connections our statute refuses to allow such an employee "pension and salary at the same time" from public resources, even though the pension is paid in another state. *Judson v. Newark Board of Works Pension Assn.*, 132 *N. J. L.* 106 (*Sup. Ct.* 1944), affirmed 133 *N. J. L.* 28 (*E. & A.* 1945); *N. J. S. A.* 43:3–1 to 43:3–4. As to somewhat similar statutes in a considerable number of other states, see 3 *McQuillin, Municipal Corporations* (*3rd ed.* 1949), § 12.159; 162 *A. L. R.* 1469; *People ex rel. Luthardt v. Retirement Board*, 273 *Ill. App.* 387 (*App. Ct.* 1934).

█ The conclusion reached here is in conformity with *N. J. S. A.* 38:23–5. That statute should be construed with *N. J. S. A.* 38:23–4 in an endeavor to give unity to the law. Specifically *N. J. S. A.* 38:23–5 provides for the computation of the pension for a public employee still in military service, but only in the event of disability or death. The failure to provide for such a computation in the event of retirement from the state employ while in active military service is a substantial indication of an intention not to provide for a pension in that event.

Our conclusion is also in conformity with another provision of *N. J. S. A.* 38:23–4, which deprives a person of the benefits of the statute if he has been separated from the service by a dishonorable discharge. A question as to dishonorable separation from the active military service must of course be deferred until after the termination of such service.

█ When and if Col. Salz applies for a pension after separation from the active military service, consideration can be given to the further question, raised here, whether he has abandoned his position with the State Police by remaining in the Army and, incidentally, whether the leave of absence allowed by the statute extends after the termination of hostilities on December 31, 1946 through the technical state of war which existed thereafter and through the national emergency declared by the President on December 16, 1950. *Feil v. Senisi*, 7 *N. J. Super.* 517 (*Law Div.* 1950); 3 *Code Fed.*

*Regs.* 71 (1950 *supp.*) (Presidential Proclamation 2914—1950, 50 *U. S. C. A. Appendix, note preceding* § 1); 3 *Code Fed. Regs.* 30 (1952 *supp.*) (Presidential Proclamation 2974—1952, 50 *U. S. C. A. Appendix, note preceding* § 1). These questions should be determined under the law prevailing at the time of such an application on Col. Salz's part. *Laden v. Daly,* 132 *N. J. L.* 440 (*Sup. Ct.* 1945), affirmed 133 *N. J. L.* 314 (*E. & A.* 1945); *Caronia v. Police and Fire Pension Com. of Orange,* 18 *N. J. Super.* 149 (*App. Div.* 1952).

We therefore hold, substantially as held by the State House Commission, that Col. Salz's application for a pension was properly denied without prejudice to a reconsideration of his rights either in the event an application is made upon his separation from active service in the Army or in the event of his disability or death.

FRANCIS, J. A. D. (dissenting). Appellant became a member of the State Police on July 1, 1922. He was still so employed when on January 6, 1942, shortly after the outbreak of World War II, he was ordered to duty in the armed forces. As of that date he was granted a leave of absence without pay for the duration of the national emergency. He is still in military service and his leave of absence is in existence and unrevoked.

At the inception of Salz's leave, *R. S.* 53:5–2 provided that a member of the State Police who had been so employed for 20 years and had reached the age of 50 years might be retired on three-quarters of his pay in the discretion of the State House Commission. On January 6, 1942, Salz was over 46 years of age and about six months short of the required 20 years' service.

Salz contributed to the pension fund before the war and thereafter down to July 1, 1942, when the Legislature relieved certain public employees in military service of the obligation and transferred it to the State or other political subdivision or agency involved. *N. J. S. A.* 38:23–6; *L.*

1942, *c.* 252. Since then his contributions have been made by the State.

Under the legislation in force when Salz was granted his leave of absence, for all purposes including pension rights the time spent in the armed forces was to be considered as time spent in his regular public employment. *N. J. S. A.* 38 :23–4 stipulated that:

"*   *       *       *       *       *       *       *

In no case shall such person be discharged or separated from his office, position or employment during such period of leave of absence because of his entry into such service. During the period of such leave of absence such person shall be entitled to all the rights, privileges and benefits that he would have had or acquired if he had actually served in such office, position or employment during such period of leave of absence, *except, unless otherwise provided by law,* the right to compensation. Such leave of absence may be granted with or without pay as provided by law. *   *   *"

And on June 16, 1942, *N. J. S. A.* 38 :23–5; *L.* 1942, *c.* 252, became effective. It provided, *inter alia,* that no person on military leave who at the beginning of such leave

"*   *   *   was or is a member in good standing of any pension, retirement, or annuity fund, shall suffer the loss or impairment of any of the rights, benefits or privileges accorded by the laws governing such pension, retirement or annuity funds; and the time spent in such service by any such person shall be considered as time spent in the office, position or employment held by him at the time of his entry into such service, in all calculations of the amount of pension to which he is entitled and of the years of service required to entitle him to retire; *   *   *."

On October 3, 1946, Salz, having become 50 years of age and by virtue of the statutes referred to having completed more than 20 years of service in the State Police, applied for a pension. The application was rejected, as the State House Commission obviously had the discretionary right to do. Apparently the reason assigned was that such a request was not in order until after discharge from the Army.

Since then he has continued in military service, through the Korean emergency (see definition of "emergency," *N. J. S. A.* 38 :23–4.1; 38 :23–5) and down to the present time. The record shows no request by the State Police Department

for his return to police duty, no suggestion that he apply for discharge from the Army, if he was eligible to do so, and no notice to him or indication of any kind relating to possible revocation of the leave of absence.

In 1949, *N. J. S. A.* 53:5–2.1; *L.* 1949, *c.* 251, was adopted. It provides:

*"Notwithstanding any other provision of law,* any member of the department of State Police who has actively served in said department for a period of twenty-five years and who has reached the age of fifty-five years *shall be retired* \* \* \*."

In December 1952, three years after Salz became 55 years of age, and when, counting the time in military service as service in the State Police, as he was entitled to do under the statutes recited, he had over 30 years of service, a second application was made for retirement. Again it was rejected without prejudice to his right to reapply "upon his return from the Army of the United States."

The majority opinion sustains the view of the Commission on the ground that the statute, *N. J. S. A.* 38:23–4, bars "compensation" (which is construed to mean pension as well as salary or wages or pay) "during the period of such leave of absence," "unless otherwise provided by law."

In my judgment "compensation" was used interchangeably with pay or wages and has the same significance. An indication of this emanates from *N. J. S. A.* 38:23–6, already referred to. This section refers to the amount of "compensation" received prior to the entry into service as the basis for the rate of contribution to the pension fund. And although it relieves persons on military leave who are not receiving "compensation" from the State from further contributions to the fund, it requires those who are receiving "compensation" to continue their payments. So when the majority opinion speaks of the statement in section 4 that leave may be "with or without pay" as demonstrating an intention to differentiate between compensation and pay, that conclusion appears to be at odds with section 6, where it seems obvious that compensation means pay.

Moreover, when "compensation" in section 4 is considered in the light of the probable meaning of "unless otherwise provided by law," it becomes even more plain that the terms were regarded as of the same connotation. At the time *N. J. S. A.* 38:23–4 was adopted, *R. S.* 38:23–3, which had been in force since 1918, granted permission to the appropriate officers in the government to pay the "salaries or compensation" of employees while they are engaged in a branch of the military or naval service of the National Government or of the State. The second paragraph of this act forbids the payment of a greater portion of the "salary or compensation" to a commissioned officer than will, when added to his salary as such commissioned officer, equal his regular salary from the state or political subdivision.

Therefore, if compensation in section 4 is the equivalent of pay or salary and has no reference to pension, the mandate of the statute is that all rights, privileges and benefits normally accruing to a governmental employee come to him and remain with him while he is on military leave of absence, including the right to retirement. This view is emphasized by section 5, already outlined, which specifically ordains against the suffering of loss or impairment of pension rights, benefits or privileges, and requires the time spent in the armed forces to be included as time spent in the public employment in the calculation of the years of service necessary for retirement.

Manifestly, such statutes were enacted by the Legislature to encourage military service by public employees and in a sense to reward them for taking up arms. *Quam v. City of Fargo*, 77 *N. D.* 333, 43 *N. W. 2d* 292 (*Sup. Ct.* 1950). In their minimum implication they preserve for such employees all rights and benefits they would have received in the normal course of their employment. Consequently, liberal construction thereof is demanded in order to effectuate these beneficent purposes.

When *N. J. S. A.* 53:5–2.1 was enacted in 1949, if Salz were still engaged in his regular employment, it would have been mandatory on the Commission to retire him on pension

when he reached 55 years of age and served the requisite 25 years. He could not have remained a member of the State Police nor could the Department have retained him.

Since service in the armed forces was expressly made the same as actual service in the State Police, the right to retirement accrued to Salz just as if the 25 years had passed in his regular employment.

Even if the premise is accepted that compensation includes pension "unless otherwise provided by law," in my judgment it does not stand in the way of the pension here. For *N. J. S. A.* 53:5–2.1 expressly says: "Notwithstanding any other provision of law * * *," Salz shall be retired on reaching 55 years of age and after 25 years of service. This was a later expression of the legislative will; we must presume that it was made with an awareness of existing cognate legislation. And so it seems inescapable to me that the qualifications suggested by the majority opinion, if in fact existing, were waved aside by the law makers.

Accordingly, when Salz sought his pension, all of the necessary requisites having been met, there was no alternative but to grant it. *Pangburn v. Ocean City Police, etc., Commission,* 136 *N. J. L.* 501 (*Sup. Ct.* 1948); *Schliske v. Firemen's & Policemen's Pension Fund Commission,* 133 *N. J. L.* 249 (*Sup. Ct.* 1945); *Beronio v. Pension Commission of City of Hoboken,* 129 *N. J. L.* 557 (*Sup. Ct.* 1943), affirmed 130 *N. J. L.* 620 (*E. & A.* 1943); *Bederski v. Policemen's & Firemen's Pension Board,* 4 *N. J. Misc.* 637 (*Sup. Ct.* 1926), affirmed 104 *N. J. L.* 163 (*E. & A.* 1927). At that time he owed no further service to the State and none could be exacted of him. He was not eligible to resume his work because of the mandate of the statute, and the mere gesture of obtaining a discharge from the Army or waiting until one was given to him and then going through the formality of offering to return and then seeking the pension ought not to be required of him.

In *Gibson v. City of San Diego,* 25 *Cal.* 2d 930, 156 *P.* 2d 737, 740 (*Sup. Ct.* 1945), a quite analogous case, the Supreme Court of California said:

> "Neither does any sound reason appear why an employe, who while in the military service completes the period required for city retirement, should be compelled to wait until he has left the military service before he may collect that to which he is otherwise entitled. The city cannot exact any further service from him. If the time of his service in the armed forces is to be counted and if it plus the time of his service to the city aggregate the time which entitles him to the pension then he has the vested right to collect it." (156 *P.* 2d, at 740, 741)

Respondent suggests that Salz must be held to have abandoned his employment by failing to return to it since 1942. However, reference to the presidential proclamations with respect to the first national emergency here involved, and the second and still existing one arising out of the Korean conflict, cited in the majority opinion, shows that his right to pension accrued during the national emergency recited in his leave of absence. And it appears further that the Legislature enlarged the definition of emergency as originally employed to include the emergency resulting from the second proclamation. *N. J. S. A.* 38:23–4.1; 38:23–5.

In any event, no action has ever been taken by appellant's superiors to recall the leave of absence; no notice has ever been given to him that unless he is discharged within a given time and returns to the state service (assuming that such discharge can be obtained on his application) the leave will be revoked. On the contrary, the contributions to the pension fund are still being made on his behalf by his superiors, which is clearly indicative of voluntary recognition of the outstanding leave. Moreover, no determination or suggestion of abandonment of employment was given by the Commission as a reason for denial of the pension. On the contrary, the denial was without prejudice to the right to renew the application upon Salz's return from the Army.

Under all the circumstances the denial of the pension should be reversed.