[Civ. No. 11560.   Third Dist.   Apr. 27, 1967.]

WILLIAM G. BONELLI et al., Petitioners, v. HOUSTON FLOURNOY, as State Controller, etc., Respondent.

Robert E. Hannon for Petitioners.

Thomas C. Lynch, Attorney General, and William J. Power, Deputy Attorney General, for Respondent.

BRAY, J.*—Petition for peremptory writ of mandate to compel respondent Controller[1] of the State of California to pay petitioner, William G. Bonelli, the pension allowances accruing to him since February 1959, with interest, allowances hereafter accruing, and to pay petitioners the sum of $15,000 deposited by them with the Franchise Tax Board of the State of California, with interest.

### QUESTIONS PRESENTED

While many questions are presented on the merits, because of the peculiar circumstances in this case this court feels that, in its discretion, it should decline jurisdiction as petitioners have adequate remedies open to them in the superior court.

### RECORD

The petition sets forth the state positions formerly held by William and particularly that, as a member of the State Board of Equalization, he was a member of the Legislators Retirement System; that on January 8, 1959, the Board of Administration of the State Employees Retirement System granted him his retirement pension and advised that his first warrant therefor would be mailed to him in February. In 1959 the Franchise Tax Board notified petitioners of a deficiency in their tax returns for each of the years 1952 and 1953. To stay collection and prevent the assessment from becoming final, petitioners filed a petition for reassessment together with a cash bond of $15,000. In 1966, after having been notified by the tax board that the assessment had been reconsidered and the assessment withdrawn, petitioners demanded the return of the $15,000. Neither the retirement pay nor any sum has been paid, although demand has been made therefor. On March 3,

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

[1] Alan Cranston, the then Controller, was named as respondent. Subsequent to his election to succeed Cranston, Houston Flournoy, the incumbent State Controller, was substituted as respondent.

1959, the State Controller notified William that he intended to suspend the payments due him under the Retirement Act and had intercepted and impounded them. On May 26, 1966, a similar notification was given petitioners concerning the $15,000.

Petitioners then allege that they were entitled to the before-mentioned moneys, that it is the Controller's duty to pay them to petitioners, and ask for a writ of mandate to compel the Controller to pay them and the further pension as it accrues.

The Controller filed a return which, in effect, admits that the state owes William the retirement pension and the petitioners' $15,000, but claims that William owes the state in excess of $250,000; that, therefore, the Controller is entitled to impound and hold the moneys due petitioners until the exact amount of money owed by William is determined and that amount deducted from that due petitioners; that William, while a member of the Board of Equalization, collected large amounts from persons who were subject to licensing by that board, and that such amounts are due the State of California and are in excess of the amounts due petitioners; that the Controller notified William to appear at Sacramento with his books and records for an accounting and for oral examination, which William has refused to do.

The return further alleges that in 1954 William was indicted by the San Diego County Grand Jury, with others, "for conspiring to commit the crime of soliciting, asking and receiving contributions from persons licensed by the Board of Equalization to sell alcoholic beverages and with conspiring to do acts injurious to the public morals and to prevent and obstruct justice;" that since 1955 he has been and still is a fugitive from justice sojourning in Mexico; in effect, that the Controller is holding the moneys due petitioners to await the determination of the state's claim that William owes the state money, and that when the amount, if any, is determined it may be offset against the moneys due petitioners; that on May 6, 1959, the State Controller filed suit in the Sacramento County Superior Court against William, alleging that he "collected money from liquor licensees in the Fourth Equalization District in excess of the legal fees due from such licensees and that the illegal fees so collected were in the aggregate in excess of $250,000.00;" that by reason of William's absence from the state, service of summons and complaint in that action has never been accomplished.

█ . Thus, the ultimate issue is whether moneys, if any, received illegally by a state official by reason of his official position may be offset against pensions and money deposited as a tax bond. However, the primary question is whether good cause is shown why relief should not have been sought in the superior court. "[I]t [the court] may refuse the relief where the applicant's substantial rights are otherwise amply protected." (*Bartholomae Oil Corp.* v. *Superior Court* (1941) 18 Cal.2d 726, 730 [117 P.2d 674].) With the possible remedies open to petitioners in the superior court their rights are amply protected.

Rule 56 (a) of the California Rules of Court provides in part: "A petition to a reviewing court for a writ of mandate . . . shall set forth the matters required by law to support the petition, and also the following: (1) If the petition might lawfully have been made to a lower court in the first instance, it shall set forth the circumstances which, in the opinion of the petitioner, render it proper that the writ should issue originally from the reviewing court."

Applicable here is the following from *County of Sacramento* v. *Hastings* (1955) 132 Cal.App.2d 419, 420 [282 P.2d 100] : "It was never intended that such applications [for writ of mandate] should be filed in an appellate court unless there was some good reason why it should not be filed in the superior court. . . ." As said in *Keyston* v. *Banta-Carbona Irr. Dist.*, 19 Cal.App.2d 384, 386 [65 P.2d 371], quoting *Brougher* v. *Board of Public Works*, 205 Cal. 426 [271 P. 487], "It has never been the policy of this court to encourage the institution of proceedings herein, particularly where there is a dispute as to the facts involved, when such proceedings could as well have been instituted in the first instance in the superior court of the county where the controversy arose."

Petitioners have shown no good reason why the questions they are raising should not be tried in the superior court. They refer to *Roma Macaroni Factory* v. *Giambastiani* (1933) 219 Cal. 435 [27 P.2d 371], which held that the appellate courts will exercise primary jurisdiction "where some emergency exists or the public welfare is involved." There is no emergency here. That is well shown by the fact that it has been eight years since the Controller impounded the money due petitioners and approximately eight years since the Controller brought the superior court action against them. During this time petitioners, until now, have made no effort to

test their rights nor to submit to the jurisdiction of the court in the action brought against them.

Nor is the public welfare involved to any great extent. Only petitioners' rights are involved herein. Although the general question whether moneys owed the state may be offset against pension rights is a matter of some general concern, it is not such a matter as to require out-of-the-ordinary procedure to determine that question.

As to the matter of delay due to a possible appeal from a determination by the superior court, Chief Justice Gibson in *Phelan* v. *Superior Court,* 35 Cal.2d 363, 370 [217 P.2d 951], said where "there is a right to an immediate review by appeal, that remedy is almost as speedy as a writ proceeding, under present practice, and should be considered adequate unless petitioner can show some special reason why it is rendered inadequate by the particular circumstances of his case."

The cases cited by petitioners where the appellate courts have justified bypassing the superior court are not in point here. Thus, *Lindell* v. *Board of Permit Appeals* (1943) 23 Cal.2d 303 [144 P.2d 4], dealt with matters of public importance due to "the existent wartime emergency" (p. 310); *England* v. *City of Long Beach* (1945) 27 Cal.2d 343 [163 P.2d 865], dealt with the failure of the city to provide funds to pay the pensions of the petitioner and other pensioners; *May* v. *Board of Directors* (1949) 34 Cal.2d 125 [208 P.2d 661], dealt with failure of an irrigation district over a period of years to pay either interest or principal on its bonds; *Berkeley Unified School Dist.* v. *City of Berkeley* (1956) 141 Cal.App.2d 841 [297 P.2d 710], dealt with the refusal of the city council to levy a tax for school purposes and of the auditor to deliver to the county treasurer for use of the schools certain tax moneys theretofore collected.

If William did receive bribes or other moneys and it were determined that such moneys could be used as an offset, then the amount thereof would have to be determined—matters which could best be determined in the superior court. Without deciding the matter, there is reason to believe that the Controller may lawfully claim the offset. (See Gov. Code, § 12419.5; *Terry* v. *Bender* (1956) 143 Cal.App.2d 198, 211 [300 P.2d 119].)

William in trying to persuade this court to take jurisdiction takes the position that this court should assume that he owes the money as charged for the purpose of a preliminary

determination of the legal questions involved, and that only after a determination against his contentions should the factual issues be determined. However, it appears to us that all questions should be determined by a court that is equipped better than this court to try all the issues. One of the fact issues to be determined, in addition to the issue as to whether William owes the state any money to be offset, is that concerning petitioners' contention that there are facts existing which support their contention that respondent's acts in asserting a setoff violate article I, section 11, of the California Constitution providing "All laws of a general nature shall have a uniform operation," and the Fourteenth Amendment to the United States Constitution that no state shall "deny to any person within its jurisdiction the equal protection of the laws." This issue also would require the taking of testimony, a matter for which this court is ill equipped.

As before stated, there is already a proceeding pending in the Sacramento County Superior Court brought by the Controller against William to determine whether he, as a member of the Board of Equalization, collected illegal fees. William refuses to appear in that action, and, being a resident of Mexico, the jurisdiction of his person cannot be obtained. It appears that petitioners feel that by the proceeding brought in this court they can get a strategic advantage over the position they would be in were they to cross-complain in the Sacramento court or to proceed in any action they might initiate in the superior court. It appears to us that we may use our discretion under all the circumstances to deny them that advantage. They have plain and adequate remedies in that court available to them.

The facts stated in the petition do not furnish a sufficient reason to excuse petitioners from applying to the superior court for relief.

The alternative writ heretofore issued is discharged and the petition for a peremptory writ of mandate denied without prejudice to petitioners applying to the superior court for appropriate relief.

Pierce, P. J., and Friedman, J., concurred.

Petitioners' application for a hearing by the Supreme Court was denied June 21, 1967. Mosk, J., did not participate therein.